**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHAEL J. WAPPLER,

                  Petitioner,               Case Number: 04-CV-72825

v.                                   PAUL D. BORMAN
                                   UNITED STATES DISTRICT JUDGE

DOUGLAS VASBINDER,

                  Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS;**
**AND (2) DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

Petitioner Michael J. Wappler has filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Ionia Maximum Correctional Facility in Ionia, Michigan, challenges his convictions for felonious assault and felony firearm. For the reasons set forth below, the Court denies the petition.

**I.      BACKGROUND**

Petitioner's convictions arise out of events that occurred at his home in Addison Township, Michigan, on September 30, 1999. Petitioner was charged with the felonious assault of his wife, Nanci Wappler.

Lorrie Manning, a 911 dispatch operator, testified that, on the evening of September 30, 1999, she received a call from a woman identifying herself as Nanci Wappler. Ms. Manning testified that Ms. Wappler was very upset and stated that she was in the bathroom, with a fan running, so that her husband would not hear her making the telephone call. Ms. Wappler stated that she was scared and upset and that her husband was walking around with the house with a gun and she feared that he would kill her. Ms. Manning immediately dispatched police to Ms.

Wappler's address.  The 911 tape was played for the jury.

Dennis Liscoki testified that he went to the Wappler house on the evening of September 30, 1999, to deliver a boat to Petitioner.  He spent some time with Petitioner and Ms. Wappler. He characterized Ms. Wappler's mood as excited and testified that she seemed neither despondent nor depressed.

Mark Webber testified that he had been friends with Petitioner for approximately twenty years.  On September 30, 1999, Petitioner was driving Mr. Webber home from a job where they had both been working when Petitioner was pulled over by a police officer because of a problem with his license plate.  Petitioner was advised by the officer not to drive for a few hours because he had been drinking.  Mr. Webber testified that he and Petitioner parked the car and went to a restaurant where they each drank an additional five to seven beers.  While they were at the bar, Ms. Wappler called Petitioner and she and Petitioner argued.  Mr. Webber testified that he went to Petitioner's house with Petitioner.  After they arrived, Petitioner and Ms. Wappler began arguing.  Mr. Webber then left the house because he was concerned about Petitioner's temper and characterized Petitioner as scary when he drinks.  Mr. Webber went outside and climbed a tree, where he remained until police arrived.  Petitioner later came outside to look for Mr. Webber, but Mr. Webber remained in the tree because he was frightened.

Police officer Steve Clark testified that he responded to a call that a man in Addison Township was threatening his wife with a gun.  He and police officer Jeff Suave searched the Wappler premises for Petitioner.  Officer Clark entered the home, announced his presence, and heard Ms. Wappler tell the 911 dispatcher, "Oh my God, he's back."  Tr., 7/6/2000, p. 22.  Ms. Wappler exited the bathroom and was clearly distraught.  Ms. Wappler informed the officer that

she feared Petitioner and knew that if he returned he would kill her.  Officer Clark obtained an

oral and written statement from Ms. Wappler.  These statements were consistent with her

statement to Officer Clark and the 911 dispatcher that she feared Petitioner.

Nanci Wappler was called as a defense witness.  She testified that she suffers from

psychotic depression and, at the time of this incident, was under the care of a psychiatrist and

taking an anti-anxiety medication.  Ms. Wappler testified that, on the evening of the incident, she

took two xanax pills to calm a panic attack, drank some beer, and then took two additional xanax

pills.  She had an argument with Petitioner when he arrived home that evening.  She then

retrieved a loaded shotgun from the bedroom and announced that she was going to commit

suicide.  Ms. Wappler testified that, while she remembered going into the bathroom to call 911,

she had no recollection of what she said to the 911 operator.  She had no recollection of giving a

written statement to Officer Clark and claimed that the statement was fabricated. Petitioner did

not testify in his own defense.

Following a jury trial in Oakland County Circuit Court, Petitioner was convicted of

felonious assault and felony firearm.[1]  Petitioner pleaded guilty to being a third habitual

offender.  On August 15, 2000, he was sentenced to twenty (20) to ninety-six (96) months

imprisonment for the assault conviction, to be served consecutively to two (2) years

imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals presenting the

following claims through counsel:

---

[1]  This was Petitioner's second trial on these charges.  The first trial ended in a mistrial because the jury was deadlocked.

I.      Mr. Wappler's conviction must be reversed, as it was based entirely on inadmissible hearsay.

II.     Mr. Wappler was tried on the basis of a plethora of highly prejudicial prior bad acts evidence, even though the trial court had already deemed that evidence irrelevant and inadmissible.

III.    Defendant is entitled to a remand for correction of inaccuracies in the presentence report.

Petitioner also presented the following claims in a *pro se* supplemental brief:

I.      Prosecutorial misconduct (eighteen allegations).

II.     Ineffective assistance of trial counsel.

III.    Insufficient evidence.

IV.     Expert testimony regarding spousal abuse improperly admitted.

V.      Prosecutor had improper contact with jury.

VI.     Cumulative error.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Wappler*, No. 229485, 2002 WL 1963769 (Mich. Ct. App. Aug. 23, 2002) (unpublished).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Wappler*, 468 Mich. 891 (2003).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claims:

I.      Right to a fair trial, due process of law violated by admission of hearsay previously deemed inadmissible, prosecutor display of exhibit violated constitutional rights.

II.     Right to a fair trial, due process of law violated by admission of plethora of highly prejudicial alleged prior bad acts evidence, violated constitutional rights.

4

III.    Petitioner was sentenced under inaccurate information contained in the presentence investigation report violating constitutional right to due process of law under federal constitution and *Townsend v. Burke*, 334 U.S. 736 (1948).

IV.    Right to a fair trial, an impartial jury and due process of law violated by prosecutor's eighteen acts of misconduct which requires reversal and bars a retrial.

V.    Petitioner's Sixth Amendment federally secured right to effective assistance of counsel . . . was violated by appointed counsel.

VI.    The prosecution failed to prove beyond a reasonable doubt with competent evidence that Petitioner is guilty of felonious assault and felony firearm.

VII.    The Petitioner's federally secured Fourteenth Amendment constitutional right to due process of law was violated by allowing expert witness testimony in the state criminal trial regarding alleged victims of spouse abuse retracting allegations as the testimony was abused by the prosecution, unrestrained to the narrow limits of the order allowing it, and was more prejudicial than probative.

VIII.    Petitioner was denied due process of law under the Fourteenth Amendment . . . when the trial judge left to go out of town during deliberations allowing ex parte communication by the prosecutor with the jury.

IX.    Petitioner was denied due process of law because of the cumulative effect of the errors.

X.    Petitioner was denied due process of law and the right to a meaningful appeal where no transcript of the actual 911 tape played at trial was provided for appeal, no adequate substitute for the transcript was utilized by the appellate court, transcripts were produced in miniaturized form not on 8-1/2 by 11 inch paper.

5

## II.    ANALYSIS

### A.    Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts

reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal law, as
>        determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>        determination of the facts in light of the evidence presented in the
>        State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a

petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998).

Additionally, this Court must presume the correctness of state court factual determinations.  28

U.S.C. § 2254(e)(1);[2] *see Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give

complete deference to state court findings unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as

follows:

---

[2]  28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct.

6

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11.

### B.    Admission of Hearsay Testimony

In his first claim, Petitioner argues that the trial court erred in admitting hearsay statements of the victim because they were not properly categorized under the excited utterance or present sense impression exceptions to the hearsay rule. The court permitted two police officers to testify as to Ms. Wappler's oral statements to them when they responded to the 911 call and admitted the transcript of Ms. Wappler's 911 call. And, Ms. Wappler's written

7

statement to police was displayed for the jury to see.

It is well-established that "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Louis v. Jeffers*, 497 U.S. 764, 780 (1990)). The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 22, 23 (6th Cir. 1981). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

The Michigan Court of Appeals held Ms. Wappler's oral statements were properly admitted under the hearsay exceptions of excited utterance and present sense impression. The court also held that the written statement was properly admitted as impeachment evidence. Petitioner has failed to show that the admission of the victim's statements denied him his right to a fair trial. Therefore, he is not entitled to habeas corpus relief with respect to this claim.

In addition, to the extent that Petitioner claims that the admission of victim's oral and written statements violated his rights under the Sixth Amendment's Confrontation Clause, this claim is also meritless. The Supreme Court has held that the Confrontation Clause is not implicated where "a hearsay declarant is present at trial and subject to unrestricted cross-examination." *United States v. Owens*, 484 U.S. 554, 560 (1988). Ms. Wappler testified at trial and Petitioner had the opportunity to question her regarding these statements. Therefore, the Confrontation Clause was not implicated.

C.    **Admission of Other Acts Evidence**

8

In his second habeas claim, Petitioner argues that the trial court improperly admitted

prior acts testimony.  Specifically, Petitioner objects to the admission of the following statements

from the 911 tape: Ms. Wappler's statement, "I'm tired of having guns pointed at me" and Ms.

Wappler's affirmative response to the 911 operator's question whether Petitioner had done this

before.  Petitioner also objects to admission of Ms. Wappler's written statement, "he has

threatened me many times," which was accidentally shown to the jury for a few moments when

the prosecution displayed a demonstrative exhibit.  Finally, Petitioner objects to Deputy Clark's

statement that Ms. Wappler said this "happened in the past, she didn't want it to happen again."

(Tr. p. 204).[3]  The Michigan Court of Appeals held that Ms. Wappler's statements were either

properly admitted or failed to impact Petitioner's defense.  *Wappler*, 2002 WL 1963769, at *3.

As discussed above, "'federal habeas corpus review does not lie for errors of state law.'"

*Estelle*, 502 U.S. at 67.  Thus, this claim is not cognizable on federal habeas review unless

admission of this evidence violated Petitioner's right to a fair trial.  "When an evidentiary ruling

is so egregious that it results in a denial of fundamental fairness, it may violate due process and

thus warrant habeas relief."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  The "category

of infractions" that violate fundamental fairness have been defined "very narrowly."  *Id.*

"Generally, state-court evidentiary rulings cannot rise to the level of due process violations

unless they offend[] some principle of justice so rooted in the traditions and conscience of our

---

[3]  Petitioner also objects to several additional statements made by Ms. Wappler in the
unredacted 911 tape.  The Michigan Court of Appeals determined that the record reflected that
the redacted, rather than the unredacted, tape was played for the jury and that the jury, therefore,
did not hear the objected-to statements contained in the unredacted tape.  *Wappler*, 2002 WL
1963769, at *3 n.2.  Petitioner has not shown this factual determination to be clearly erroneous.
Therefore, the Court will not address the statements not heard by the jury.

9

people as to be ranked as fundamental." *Id.* (internal quotation omitted).

There exists no clearly establish Supreme Court precedent holding that a state violates due process by permitting propensity evidence through the admission of other bad acts evidence. *Id.* The Sixth Circuit has noted that the Supreme Court has addressed the admission of other acts evidence in the context of the Federal Rules of Evidence, but has not addressed the issue in constitutional terms. *Id.* at 513. Thus, the state court's decision was not contrary to or an unreasonable application of Supreme Court precedent.

**D.    Sentencing Claim**

Petitioner argues that the he was sentenced on the basis of inaccurate information contained in the presentence investigation report. According to Petitioner, the "agent's description" section of the presentence investigation report was inaccurate and incomplete, and the presentence investigation report incorrectly scored Offense Variable 5.

Petitioner filed a motion for resentencing in the trial court raising these claims. The sentencing judge denied the claim, holding that, while the agent's description of the offense contained some minor inaccuracies, the court did not rely on those inaccuracies in imposing a sentence. With respect to the alleged misscoring of Offense Variable 5, the trial court held that Petitioner failed to lodge a timely objection at sentencing. *People v. Wappler*, No. 99-169074, slip op. at 2-3 (Oakland County Cir. Ct. Sept. 1, 2000).

A sentence violates due process when "it was carelessly or deliberately pronounced on an extensive and materially false foundation which the prisoner had no opportunity to correct." *Draughn v. Jabe*, 803 F. Supp. 70, 80 (E.D. Mich. 1992), *aff'd* 989 F.2d 499 (6th Cir. 1993). A sentence must be set aside where "the defendant can demonstrate that false information formed

10

part of the basis for the sentence.  The defendant must show, first, that the information before the sentencing court was false, and, second, that the court relied on the false information in passing sentence." *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988).  Further, the Supreme Court has long upheld the philosophy that, in sentencing a defendant, "'the punishment should fit the offender and not merely the crime.'" *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)).  The Court, however, has held that a sentence imposed on the basis of "'misinformation of constitutional magnitude'" violates due process.  *United States v. Tucker*, 404 U.S. 443, 447 (1972).  Petitioner may obtain habeas corpus relief regarding these sentencing claims only if he shows "that the information in question was materially false and the trial court relied on it."  *See Potter v. Yukins*, 6 Fed. Appx. 295, 296 (6th Cir. Mar. 7, 2001) (unpublished).

Sinec the sentencing judge did not rely upon the inaccuracies in the agent's description of the offense, Petitioner has not shown that the trial court relied on materially false information.  Moreover, the trial court held that Petitioner was given an opportunity to correct the alleged sentencing error, but failed to do so.  In addition, with respect to the scoring of Offense Variable 5, Petitioner has not shown that the offense variable was incorrectly scored.  Accordingly, the Court denies habeas relief on this claim.

### E.    Alleged Prosecutorial Misconduct

Petitioner presents seventeen claims of prosecutorial misconduct.[4]  Respondent argues that these claims are procedurally defaulted.

---

[4] In his point heading for his prosecutorial misconduct claims, Petitioner states that he raises eighteen claims of prosecutorial misconduct.  However, he only presents seventeen prosecutorial misconduct claims.

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule.  *Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992).  Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim.  *Coleman*, 501 U.S. at 729-30.  In this case, the last state court to issue a reasoned opinion addressing Petitioner's prosecutorial misconduct claims, held that the claims were not preserved for review because counsel failed to object to the prosecutor's conduct at trial.  *Wappler*, 2002 WL 1963769, at *4.  Petitioner's prosecutorial misconduct claims, therefore, are procedurally defaulted.

"Procedural default is not a jurisdictional bar to review on the merits."  *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005).  Where it is easier for a court on habeas review to address the merits of an allegedly defaulted claim than to undertake a procedural default analysis, the court, in the interest of judicial efficiency, may address the merits of the claim

12

without examining the procedural default claim. *See Ferensic v. Birkett*, 451 F. Supp. 2d 874, 887 (E.D. Mich. 2006). In the pending case, Petitioner claims ineffective assistance of trial counsel as cause to excuse his procedural default. The Court determines that it is easier to address the merits of Petitioner's prosecutorial misconduct claims rather than to undertake an analysis of whether Petitioner has established cause to excuse the alleged procedural default.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must examine "the fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).

The Sixth Circuit has identified the factors a court should consider in weighing the extent of prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.* at 964 (quotation and citation omitted).

1.    Ms. Wappler's Testimony

In his first prosecutorial misconduct claim, Petitioner argues that the prosecutor improperly forced Ms. Wappler to testify against her husband in violation of Michigan's marital/spousal privilege law. This claim is meritless for two reasons. First, Ms. Wappler was

13

called as a witness by the defense, not the prosecution.  Second, Michigan law allows a spouse to testify where the defendant spouse is charged with a crime against the testifying spouse.  MICH. COMP. LAWS § 600.2162(3); *People v. Love*, 425 Mich. 691 (1986).

2.      Intimidation of Ms. Wappler

Second, Petitioner argues that the prosecutor intimidated Ms. Wappler by threatening to commit her to a mental institution.  The preliminary examination transcript reflects that, following her testimony, Ms. Wappler was attended to by emergency medical technicians who had recevied a report that she was suicidal.  Ms. Wappler was transported to a hospital where she voluntarily admitted herself.  In support of his claim that this was orchestrated by the prosecutor to intimdate Ms. Wappler, Petitiner attaches a letter from Ms. Wappler to the Oakland County Sheriff.  In the letter, Ms. Wappler states that she voluntarily entered the hopsital because she feared being involuntarily committed.  There is no evidence that the prosecutor sought to have Ms. Wappler committed and the judge conducting the preliminary examination expressly declined to do so.  Therefore, the Court finds that Petitioner has failed to estblish that the proscutor acted improperly in this regard.

3.      Pretrial Detention

In his third, fourth, and fifth claims of prosecutorial misconduct, Petitioner challenges the prosecutor's conduct in connection with Petitioner's pre-trial detention.  A habeas petitioner's claims related to pretrial detention are moot once the petitioner has been convicted.  *See Yohey v. Collins*, 985 F.2d 222, 228-229 (5th Cir. 1993); *Thorne v. Warden*, 479 F.2d 297 (2d Cir. 1973).  Because Petitioner has been convicted, his pretrial detention-related claims are moot.

4.      References to Ms. Wappler as the "Victim"

14

Prior to trial, Petitioner filed a motion to prohibit the prosecutor from referring to Ms. Wappler as the "victim" and directing the police not to refer to Petitioner as the "responsible person." The trial court granted the motion. Nevertheless, the prosecutor referred to Ms. Wappler as the victim numerous times during trial and *voir dire*. Some of these instances were objected to by the defense counsel, most were not. In addition, a prosecution witness twice referred to Petitioner as the "responsible person."

While the statements of the prosecutor and witness may have violated the trial court's order, they did not impact the fairness of Petitioner's trial. The reference by the witness to Petitioner as the "responsible person" was isolated and there is no indication that it was done intentionally, or impacted the fairness of the trial. The prosecutor's references to Ms. Wappler as "the victim" were more frequent. However, considering the trial as a whole, they were not frequent enough or egregious enough to mislead the jury or prejudice Petitioner.

5.      Statements That Use of a Firearm was "Uncontroverted"

In his seventh prosecutorial misconduct claim, Petitioner argues that the prosecutor improperly commented on Petitioner's decision not to testify when she stated that the testimony that Petitioner used a firearm was "uncontroverted." Petitioner apparently argues that the reference to uncontroverted testimony was a reference to Petitioner's failure to testify and refute the testimony. The Court finds that the prosecutor's reference to uncontroverted testimony was not a reference to Petitioner's failure to take the stand. It was simply the prosecutor's characterization of the strength of the evidence presented and the defense's failure to present any witnesses to effectively counter the prosecutions' witnesses. *See Shaffer v. Boone*, 3 Fed. Appx. 675, 684 (10th Cir. Jan. 10, 2001) (unpublished) (holding that jury would not interpret

15

prosecutor's reference to uncontroverted testimony to be a comment on defendant's failure to testify; instead, jury likely would view it as a comment on the strength of the evidence against defendant).

      6.      Improper Use of Voir Dire

Next, Petitioner argues that the prosecutor improperly used the *voir dire* as an opportunity to attack Ms. Wappler's credibility and argue the prosecution's case. During *voir dire*, the prosecutor asked, in essence, whether prospective jurors had the capacity to consider fairly a case where the purported victim no longer supported the charges. The prosecutor articulated the prosecution's theory that, in cases of domestic violence, the victim is frequently ambivalent about the relationship and about pressing charges. The Court finds that the prosecutor's questions were designed to determine whether any jurors were unable to evaluate the case in an unbiased manner. Therefore, the prosecutor's conduct was not improper. *See Norman v. Bradshaw*, No. 05-1796, 2006 WL 3253121 (S.D. Ohio Nov. 8, 2006) (unpublished) (holding that prosecutor's repeated reference during *voir dire* to the defendants and defense witnesses as gang members was not improper where the prosecution's theory of the case was that murder was the result of gang-related violence). Moreover, even if the prosecutor's questions were improper, Petitioner fails to show the questions implicated his right to a fair trial.

      7.      References to "Domestic Abuse" and Expert Testimony

Petitioner next argues that the prosecutor acted improperly in injecting references to domestic abuse and abuse into the trial and by eliciting expert testimony regarding patterns of domestic abuse. The trial court allowed expert testimony from Judy Lee regarding behavioral patterns of domestic violence. As discussed more fully below, Petitioner has failed to show that

16

the trial court's decision allowing this testimony was improper.  Therefore, the prosecutor's conduct in eliciting testimony on this subject was not misconduct.

Petitioner also objects to the prosecutor's use of the terms "domestic abuse" and "patterns of abuse."  The prosecutor's theory was that Ms. Wappler's trial testimony was influenced by her abusive relationship with Petitioner.  Petitioner has failed to show that the prosecutor's references to "domestic abuse" and "patterns of abuse" were improper.

8.     Recusal of the Prosecutor

In his tenth claim of prosecutorial misconduct, Petitioner argues the prosecutor should have recused herself from prosecuting this case because Petitioner filed actions against her and other members of the prosecution team in federal court alleging civil rights violations.  These matters were ongoing at the time of Petitioner's trial.

"The potential conflict of interest that might result from a personal civil suit filed against [a prosecutor] by a defendant in a criminal case for acts undertaken by [the prosecutor] in his official capacity in the criminal matter would have to be very strong before disqualification would be justified."  *United States v. Kember*, 685 F.2d 451, 459 (D.C. Cir. 1982).  In this case, Petitioner fails to show that his civil suits against the prosecutor and other members of the prosecutor's team created a conflict of interest or implicated his right to a fair trial.  Therefore, he fails to establish prosecutorial misconduct.

9.     Failure to Disclose Prosecution Witness

Next, Petitioner alleges that the prosecutor failed to disclose that prosecution witness Mark Edward Webber received consideration for his testimony when, according to Petitioner, the prosecution dismissed a pending probation violation charge.  Other than this conclusory

17

allegation, Petitioner fails to provide any support for his claim that Mr. Webber received consideration in exchange for his testimony.  Therefore, Petitioner fails to show that the prosecutor failed to disclose an agreement with Webber.

          10.     Misstatement of Evidence Concerning the "Loaded Gun"

In his twelfth prosecutorial misconduct claim, Petitioner alleges that the prosecutor misstated the evidence in her closing statement.  First, the prosecutor argued that Petitioner had a loaded shotgun with the safety in the off position.  Petitioner argues that this statement was false because no prosecution witnesses testified that the gun safety was in the off position.  In addition, Petitioner maintains that the prosecutor incorrectly argued in closing that Petitioner threatened to kill Ms. Wappler.

First, Police Officer Jeff Suave testified that when he retrieved the shotgun from the garage of the Wappler's home, the safety was in the off position.  Therefore, it was not inaccurate for the prosecutor to argue in her closing statement that Petitioner threatened Ms. Wappler with a shotgun in which the safety was in the off position.

Second, the 911 transcript reflects that Ms. Wappler informed the 911 operator that her husband threatened to kill her and that she was fearful of him.  Therefore, the prosecutor's argument that Petitioner threatened to kill Ms. Wappler was not a mischaracterization of the evidence presented.

          11.     Hearsay Testimony

Next, Petitioner argues that the prosecutor elicited inadmissible hearsay testimony through witnesses Lorrie Manning, Mark Webber, and Steve Clark.  Petitioner cites specific transcript references with respect to each of these witnesses.  None of these instances cited by

18

Petitioner establishes prosecutorial misconduct.  Defense counsel objected to certain of the prosecutor's questions on the ground that they would elicit hearsay testimony.  Certain of these objections were overruled, certain of them were sustained.  There is no indication from the transcript that the prosecutor's questions were improper or that the prosecutor intentionally attempted to circumvent the trial court's evidentiary rulings by seeking to elicit testimony which the court already had ruled inadmissible.

> 12.     Admission of 911 Tape

Petitioner's fourteenth prosecutorial misconduct claim involves the admission of the 911 tape.  The admission of the 911 tape is addressed above in the context of the admission of other bad acts testimony.

> 13.     Failure to Provide Res Gestae Witness for the Breathalyzer Test

Next, Petitioner claims that the prosecution improperly failed to produce the police officer who administered a breathalyzer test to Petitioner a few hours before the incident.

Federal law does not require the production of *res gestae* witnesses. *Johnson v. Hofbauer*, 159 F.Supp. 2d 582, 601 (E.D. Mich. 2001). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Id.*  There is no indication that the police officer who administered the breathalyzer test would have provided testimony tending to exculpate Petitioner.

> 14.     Statement by Prosecutor that Petitioner was an "Angry, Mean and Violent Drunk"

In his sixteenth claim, Petitioner argues that the prosecutor improperly disparaged him during closing argument when she stated that Petitioner had no respect for authority or the law;

19

and referred to him as "an angry, mean and violent drunk."

A prosecutor may argue all reasonable inferences that may be drawn from the evidence admitted at trial as they relate to the prosecutor's case. *See United States v. Francis*, 170 F.3d 546, 552 (6th Cir. 1999). Petitioner's friend, Mark Webber, testified that Petitioner was nasty when drinking and that he was fearful of Petitioner when Petitioner was drinking. The prosecutor's comments, therefore, were reasonable inferences drawn from the evidence presented at trial.

15.    Ex Parte Communication with the Jury

Finally, Petitioner argues that the prosecutor had improper *ex parte* communication with deliberating jurors. Other than this conclusory allegation, Petitioner provides no further argument in support of his claim. This conclusory allegation is insufficient to establish prosecutorial misconduct.

**F.    Alleged Ineffective Assistance of Counsel**

In his fifth claim for habeas corpus relief, Petitioner argues that he is entitled to habeas corpus relief because his trial attorney was ineffective. Specifically, Petitioner alleges that his attorney: (1) failed to interview witnesses prior to trial; (2) failed to seek a jury instruction on necessarily included lesser offense of attempted felonious assault; (3) failed to communicate with Petitioner; (4) labored under a conflict of interest by representing Petitioner at motion for new trial where one of the grounds for the motion was ineffective assistance of counsel; (5) failed to object to numerous alleged instances of prosecutorial misconduct; (6) failed to object to the composition of the jury pool; (7) failed to secure an expert witness; (8) failed to call numerous witnesses; (9) failed to object to the presence of a substitute judge when jury rendered

20

its verdict; (10) failed to file pretrial motions; and (11) failed to move to correct inaccuracies in the presentence report.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that [t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (internal quotations and citation omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The last state court to issue a reasoned opinion regarding Petitioner's ineffective assistance of counsel claims, the Michigan Court of Appeals, held, in relevant part:

21

To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) that counsel's representation so prejudiced defendant that, but for counsel's error, the result of the proceedings would have been different. *People v. Toma*, 462 Mich. 281, 302-303; 613 N.W.2d 694 (2000). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v. Effinger*, 212 Mich. App. 67, 69; 536 N.W.2d 809 (1995). Furthermore, the defendant must overcome a strong presumption that the assistance of counsel was sound trial strategy, because this Court will not second-guess counsel regarding matters of trial strategy, even if counsel was ultimately mistaken. *People v. Rice (On Remand)*, 235 Mich. App. 429, 444-445; 597 N.W.2d 843 (1999). Nor will it assess counsel's competence with the benefit of hindsight. *Id.* at 445.

On appeal, defendant provides a laundry list of twenty-nine alleged instances of ineffective assistance of counsel, making no argument as to how defense counsel's conduct fell below an objective standard of reasonableness or how defendant was prejudiced by such conduct. However, based on the existing record, we do not believe defense counsel's conduct fell below an objective standard of reasonableness or that defendant was prejudiced by counsel's conduct. Many of defendant's alleged instances of ineffective assistance, including those involving decisions regarding what evidence and witnesses to present, are deemed matters of trial strategy, which we will not second-guess with the benefit of hindsight. . . . Furthermore, trial counsel is not required to make frivolous motions or advocate a meritless position. . . .

Similarly, defendant complains of defense counsel's failure to communicate with defendant. But again, there is no basis in the existing record or citation thereto to support these allegations. Defendant also argues that defense counsel was deficient in relation to defendant's motion for a new trial, but defendant provides no citation to the record in support of his factual allegations. To the extent that defendant claims that defense counsel's conduct deprived him of his appellate rights, the fact that this Court has considered defendant's appeal belies the argument. In sum, defendant's laundry list of complaints with no citations to the record or support therein, provides not basis for this Court to find ineffective assistance of counsel.

*Wappler*, 2002 WL 1963769, at *4-5.

The Michigan Court of Appeals, although not citing *Strickland*, cited case law which clearly incorporated the *Strickland* standard. This Court must determine whether the state court's application of *Strickland* was unreasonable. As he did on direct appeal, Petitioner, in

asserting his habeas claims, provides a laundry list of ineffective assistance of counsel claims. None of them are well-supported by case law or record evidence. Nor does Petitioner show that, even assuming counsel's performance was deficient, he was prejudiced by counsel's alleged errors. A review of the trial transcript shows that counsel vigorously defended the charges, ably cross-examined witnesses, and sought to use Ms. Wappler's trial testimony to cast reasonable doubt on the prosecutor's case.

In light of the foregoing, the Court concludes that the state court's decision was not contrary to or an unreasonable application of Supreme Court precedent.

### G.      Sufficiency of the Evidence

Petitioner claims that insufficient evidence was presented to sustain either of his convictions. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996).

The last state court to issue a reasoned opinion regarding Petitioner's sufficiency of the evidence claim, the Michigan Court of Appeals, stated, in relevant part:

23

In a criminal case, due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact's conclusion that a defendant is guilty beyond a reasonable doubt. *People v. Johnson*, 460 Mich. 720, 723; 597 N.W.2d 73 (1999). In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.* In making such a determination, this Court should not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses. . . .

"The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." [*People v. Avant*, 235 Mich. App. 499, 520 (1999).] "Circumstantial evidence and reasonable inferences arising therefrom may be sufficient to prove the elements of a crime." *Id.*

On appeal, defendant argues mainly that Wappler's testimony, in which she denied being assaulted by defendant, proved that the alleged crimes never occurred. However, the jury was free to disbelieve her testimony and this Court should not interfere with the jury's role of determining the weight of evidence or the credibility of witnesses. . . . Defendant also bases his argument implicitly on the assumption that Wappler's oral and written statements, including the 911 tape, were inadmissible. However, . . . this evidence was properly admitted.

At trial, Lori Manning, a 911 dispatcher at the Oakland County Sheriff's Department, testified that at approximately 10:56 p.m. on September 30, 1999, she received a call from Wappler whose voice was shaking as she told Manning that she was hiding in the bathroom and calling by cell phone. Wappler, who cried at times during the conversation, stated that defendant was walking around the house with a gun and wanted to kill her. Webber and Lisoski testified that they heard defendant and Wappler argue. Upon entering the house, deputy Clark heard Wappler in the bathroom crying and he also heard her say, "Oh my God, he's back." Only when the dispatcher told Wappler that the deputies were in the house, did she unlock the door and come out. Deputy Clark also testified that Wappler told him that defendant retrieved the gun from the bedroom, racked it, pointed it at Wappler, and asked her if she wanted to "fucking die." Deputy Jeffrey Suave testified that he found the gun on top of a pile of wood in the garage. The gun was loaded and the safety mechanism was off. Based on this evidence, rational jurors could find beyond a reasonable doubt that defendant assaulted Wappler with a weapon with the intent to injure or place her in reasonable apprehension of an immediate battery.[4]

_____

[4]This evidence also supports defendant's conviction of felony-firearm, the

elements of which are that (1) the defendant possessed a firearm, (2) during the commission of, or attempt to commit, a felony. . . .

*Wappler*, 2002 WL 1963769, at *5.

The Court finds this resolution of Petitioner's sufficiency of the evidence claim was neither contrary to nor or an unreasonable application of clearly established federal law. The Court of Appeals' decision cited case law which plainly incorporated the *Jackson* standard and explained and supported its conclusion that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. Petitioner has not presented any new evidence to show that the state court's findings of fact were erroneous. Therefore, according the state court's factual findings a presumption of correctness, this Court concludes that the state court of appeals' decision that all of the elements of the crimes were satisfied did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

**H.      Admission of Expert Testimony Regarding Domestic Violence**

Petitioner next argues that the trial court erred in allowing expert testimony regarding domestic abuse. As discussed above, "federal habeas corpus review does not lie for errors of state law." *Estelle*, 502 U.S. at 67. "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

The Michigan Court of Appeals held that the testimony was properly admitted because it was "relevant, highly probative, and assisted the trier of fact in assessing the credibility of the complainant when she recanted the allegations of the assault." *Wappler*, 2002 WL 1963769, at

25

*6. Petitioner has failed to show that the trial court's decision to admit this testimony deprived him of his right to a fair trial. Accordingly, he is not entitled to habeas corpus relief with respect to this claim.

### I.       Alleged *Ex Parte* Communication By Prosecutor With Jury

Petitioner argues that the prosecutor had improper *ex parte* communication with deliberating jurors. The Michigan Court of Appeals held that Petitioner failed to provide any evidentiary support for this allegation. *Id*. Similarly, in his habeas petition, Petitioner provides no argument or evidence in support of his claim. The record does not evidence any improper communication by the prosecutor with the jury. Thus, this claim is meritless.

### J.       Transcript of 911 Call

Petitioner argues that the Michigan Court of Appeals lacked a copy of the transcript of the 911 tape played at trial. In addition, Petitioner alleges that transcripts that were provided to the Michigan Court of Appeals were inadequate because they were "miniaturized." Petition at p. 10.

Petitioner argued on direct appeal that an unredacted 911 tape was improperly played at trial. He maintains that the absence of the transcript that was played at trial prevented the Michigan Court of Appeals from fairly considering this claim. The Michigan Court of Appeals held that the transcript of the 911 tape played at trial was unnecessary for appellate review because the court could determine from the trial court transcript that the redacted tape was played. Petitioner fails to show that this was an unreasonable application of Supreme Court precedent or an erroneous determination of the facts. In addition, the size of the transcript pages which were submitted to the Michigan Court of Appeals does not raise a federal constitutional

claim.  Therefore, Petitioner is not entitled to habeas corpus relief with respect to this claim.

### K.    Cumulative Effect of Alleged Errors

Finally, Petitioner claims that he is entitled to habeas corpus relief because the cumulative effect of the errors deprived him of a fair trial.  This Court has determined that the state court's holding that the errors alleged by Petitioner were not errors was not contrary to or an unreasonable application of Supreme Court precedent.  Further, the claims not addressed in state court also fail to establish a constitutional violation warranting habeas corpus relief.  Thus, Petitioner's claim that the cumulative effect of the errors alleged herein deprived him of a fair trial so as to entitled him to habeas corpus relief is meritless.

### L.    Certificate of Appealability

The Court next addresses whether Petitioner's claims warrant the issuance of a certificate of appealability.  Before Petitioner may appeal the Court's dispositive decision denying his petition, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b).  The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue.  28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re* Certificates of Appealability, 106 F.3d 1306, 1307 (6th Cir. 1997).

"When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is

satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDonnell*, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists would not find the Court's assessment of Petitioner's claims to be debatable or wrong. Accordingly, the Court holds that Petitioner is not entitled to a certificate of appealability.

## III. CONCLUSION

For the foregoing reasons, the Court **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus and **DECLINES** to issue the certificate of appealability**.**


**SO ORDERED.**

                                                        **s/Paul D. Borman**
                                                        **PAUL D. BORMAN**
                                                        **UNITED STATES DISTRICT JUDGE**
**Dated:  November 30, 2006**
                                        **CERTIFICATE OF SERVICE**

**Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 30, 2006.**

                                                        **s/Denise Goodine**
                                                        **Case Manager**

28